ams

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

VIRGINIA JOHNSON,         )
                             )
             Plaintiff,     )
                             )
      vs.                  )     Case No. 04-4142-JAR
                             )
HARRAH'S KANSAS CASINO CORP.,  )
d/b/a HARRAH'S PRAIRIE BAND    )
CASINO,                   )
                             )
            Defendant.    )
_____)

## MEMORANDUM AND ORDER

The Court now considers defendant's Motion to Dismiss Based on Tribal Sovereign Immunity (Doc. 24).  Defendant argues that it is immune from suit under the doctrine of tribal sovereign immunity and, alternatively, that plaintiff is subject to the tribal exhaustion doctrine. The Court denies defendant's motion to dismiss because the defendant does not enjoy immunity from suit, and because the Court need not transfer the case to the tribal court for disposition.

**I.  Standards**

      ***A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction***

There are two statutory bases for federal subject matter jurisdiction.  First, under 28 U.S.C. § 1332,  federal district courts have original jurisdiction of civil actions where complete diversity of citizenship and an amount in excess of $75,000 (exclusive of interest and costs) in controversy exist.  Second, under 28 U.S.C. § 1331, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States," or federal question jurisdiction.  In addition, if the Court has federal question or

diversity jurisdiction of some claims, it may exercise supplemental jurisdiction over state law claims.[1]

The Tenth Circuit has commented on the limited jurisdiction of the federal courts and summarized the duties of the district court in considering whether it has jurisdiction to consider a case:

> The Federal Rules of Civil Procedures [sic] direct that "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.". . . Moreover, "[a] court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." . . . Nor may lack of jurisdiction be waived or jurisdiction be conferred by "consent, inaction or stipulation. Since federal courts are courts of limited jurisdiction, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof.[2]

Plaintiff is responsible for showing the Court by a preponderance of the evidence that jurisdiction is proper.[3]  Mere allegations of jurisdiction are not enough.[4]  Because defendant asserts a facial challenge to plaintiff's allegations regarding subject matter jurisdiction, the Court will accept the jurisdictional factual allegations in the complaint as true.[5]

### B.  Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) Standard

Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate only if it is clear that no relief

---

[1] 28 U.S.C. § 1367.

[2] *Penteco Corp. v. Union Gas Sys.*, 929 F.2d 1519, 1521 (10th Cir. 1991) (citations and quotations omitted).

[3] *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002).

[4] *Id.* at 798.

[5] *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1303 (10th Cir. 2001).

could be granted under any set of facts that could be proved consistent with the allegations.[6]  The

purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff

is entitled to legal relief even if everything alleged in the complaint is true.[7]

On a Rule12(b)(6) motion, the court judges the sufficiency of the complaint, accepting as

true the well-pleaded factual allegations and drawing all reasonable inferences in favor of the

plaintiff and construes the allegations in the light most favorable to the plaintiff.[8]  These

deferential rules, however, do not allow the court to assume that a plaintiff can prove facts that it

has not alleged or that the defendants have violated the laws in ways that have not been alleged.[9]

If the facts narrated by the plaintiff "do not at least outline or adumbrate" a viable claim, the

complaint cannot pass Rule 12(b)(6) muster.[10]  Dismissal is a harsh remedy to be used cautiously

so as to promote the liberal rules of pleading while protecting the interest of justice.[11]

Plaintiff argues that defendant's motion to dismiss is untimely, and should therefore be

denied; however, this argument lacks merit.  Insofar as the motion is brought under Rule

12(b)(1), for lack of subject matter jurisdiction, the Court is required to dismiss the case

*whenever* it appears by suggestion of the parties or otherwise that the court lacks subject matter

---

[6]*Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984) (citation omitted).

[7]*Mounkes v. Conklin*, 922 F. Supp. 1501, 1506 (D. Kan. 1996) (quotation omitted).

[8]*Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir. 1991); *Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir. 1987).

[9]*Associated Gen. Contractors v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983).

[10]*Mounkes,* 922 F. Supp. at 1506 (D. Kan. 1996) (citing *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir. 1988) (quotation omitted)).

[11]*Poole v. County of Otero*, 271 F.3d 955, 955 (10th Cir. 2001).

jurisdiction.[12]  And, to the extent that the motion is brought under Rule 12(b)(6), it was timely

because it was filed by the deadline set in the most recent scheduling order, which was July 25,

2005.[13]

## II. Background

Plaintiff Virginia Johnson began working at Harrah's Prairie Band Casino ("the Casino")

in 1998.  The Casino is a gaming facility located on real property held in trust by the United

States for the Prairie Band Potawatomi Nation ("the Tribe"), which is a federally recognized

Indian Tribe.  Plaintiff filed suit against Harrah's Kansas Casino Corporation ("Harrah's"),

which is incorporated in Nevada and has its principal place of business outside the State of

Kansas.[14]  Harrah's operates the Casino pursuant to a Management Agreement between it and the

Tribe that was approved by the Tribal Council.  Under the Management Agreement, Harrah's

conducts the day-to-day operations at the Casino and acquires financing for the Casino.  In

return, the Tribe pays Harrah's a management fee.

Pursuant to the Kansas-Tribe Compact ("the Compact"), the Tribe receives the total net

revenue from Casino operations less payment of a management fee to Harrah's, and less other

operating expenses.  Tribal programs are then funded from the net revenue, including education,

health and human resources, housing development, road construction and maintenance, sewer

and water projects, and police, fire, and judicial services.  Tribal applicants are also given

preference in hiring decisions at the Casino. Pursuant to both the Management Agreement, and

---

[12]Fed. R. Civ. P. 12(h).

[13](Doc. 21.)

[14]The Complaint asserts defendant is incorporated in Tennessee, however supporting documents and
defendant's assertions establish that it is incorporated in Nevada.

the Compact, Casino employees must be covered by Unemployment Compensation and Workers Compensation benefits equivalent to that provided by state law.

On December 16, 2001, Johnson injured her right lower extremity while working at the Casino.  For reasons contested by the parties, Johnson alleges that Harrah's engaged in a pattern of harassment and mistreatment toward her because of her injury.  On November 14, 2002, the Casino terminated Johnson.

## III.  Discussion

Plaintiff's Complaint alleges violations of the Family and Medical Leave Act ("FMLA"), FMLA retaliation, and workers' compensation retaliation under Kansas law.  Harrah's claims that the Court lacks subject matter jurisdiction based on the doctrine of tribal sovereignty and that the Court should abstain from deciding tribal jurisdiction in this case in favor of the tribal court.  The Court will deal with each basis for dismissal in turn.

### A.  Tribal Sovereignty

Plaintiff's Complaint asserts two bases for this Court's jurisdiction: diversity jurisdiction pursuant to 28 U.S.C. § 1332; and federal question jurisdiction under 28 U.S.C. § 1331 because the suit is in part based on the FMLA—a federal statute.  Harrah's argues that the doctrine of tribal sovereign immunity[15] should be extended to shield it from suit because it is a "tribal entity."

---

[15]Harrah's motion subsumes that the Tribe would be immune from suit under the FMLA, which is a statute of general applicability.  Harrah's does not discuss whether the Tribe would be considered an employer under the FMLA.  *See E.E.O.C. v. Cherokee Nation*, 871 F.2d 937, 938 n.3 (10th Cir. 1989) (finding the ADEA, a statute of general applicability, did not apply to Indian entities); *Donovan v. Navajo Forest Prods. Indus.*, 692 F.2d 709, 711 (10th Cir. 1982) (construing *Tuscarora* rule).

Tribal sovereign immunity is a matter of subject matter jurisdiction.[16]  "'Indian tribes are domestic dependent nations that exercise inherent sovereign authority over their members and territories.  As an aspect of this sovereign immunity, suits against tribes are barred in the absence of an unequivocally expressed waiver by the tribe or abrogation by Congress.'"[17]  The parties do not dispute that an Indian tribe enjoys sovereign immunity from suit.  And, plaintiff does not contend that Congress abrogated the Tribe's immunity under the FMLA.  Instead, the issue before the Court is whether the Tribe's immunity extends to defendant Harrah's.[18]

Harrah's argues that the Court should follow the reasoning in *Indian Country, U.S.A., Inc. v. Oklahoma ex rel. Oklahoma Tax Commission.*[19]  In that case the Tenth Circuit discussed a State's authority with respect to bingo operations on certain "unalloted" tribal lands.[20]  There, Creek Nation Bingo was located on land owned by the Creek Nation and was managed by Indian Country, USA. (ICUSA), a non-tribal entity.  ICUSA managed the games pursuant to a management agreement with the Creek Nation.  The court found that ICUSA was part of the "tribal enterprise" and that Creek Nation's immunity from state regulation extended to it.[21]  The

---

[16]*Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998); *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1302 (10th Cir. 2001); *Tenney v. Iowa Tribe of Kan.*, 243 F. Supp. 2d 1196, 1197 (D. Kan. 2003).

[17]*St. Stephen's Indian High Sch.*, 264 F.3d at 1304 (quoting *Fletcher v. United States*, 116 F.3d 1315, 1324 (10th Cir. 1997)); *see Chayoon v. Chao*, 355 F.3d 141, 143 (2d Cir. 2004) (finding tribal sovereignty blocks suit against tribe under FMLA).

[18]Plaintiff also argues that if sovereign immunity extends to Harrah's, the Tribe waived its immunity in the Management Agreement.  Because the Court ultimately concludes that sovereign immunity does not extend to Harrah's, it will not address this argument.

[19]829 F.2d 967 (10th Cir. 1987), *cert. denied*, *Okla. Tax Comm'n v. Muscogee (Creek) Nation*, 487 U.S. 1218 (1988).

[20]*Id.* at 970.

[21]*Id.* at 983.

Court reached this conclusion by noting evidence that the Creek Nation "developed the bingo enterprise for the benefit of the tribe. . . . [and] that benefits are in fact flowing to the tribe, in the form of both profits and employment."[22]  Additionally, the court noted that the Creek Nation owned the land and the facility, and had ultimate control over the gaming activities there, as well as the fact that the Bureau of Indian Affairs approved the management contract.[23]

Harrah's argues that the same factors present in the relationship between the management company and the tribe in *Indian County* are present here.  Harrah's cites the following facts in support of these similarities: (1) the Management Agreement governs its operation of the Casino and was approved by the Tribe; (2) the Tribe owns and controls the real property associated with the Casino; (3) the Tribe developed the Casino for its own benefit under the Kansas-Tribe Compact; (4) the Tribe receives profits and employment for its members from the Casino; (5) the Tribe receives the revenue derived from the Casino, less a management fee and operating expenses; (6) tribal applicants are given preference in hiring decisions; and (7) the Tribe is liable for litigation-related expenses and any judgment against Harrah's.

The Court finds that Harrah's reliance on *Indian Country* is misplaced.  That case only discusses what constitutes a "tribal enterprise" for the purposes of preemption of state regulations.  As Harrah's properly notes: "the definition of an Indian tribe changes depending upon the purpose of the regulation or statutory provision under consideration."[24]  Harrah's is unable to point the Court to any authority from the Tenth Circuit where tribal sovereign immunity was extended to a non-tribal entity on the basis that it is part of a "tribal enterprise," as

---

[22]*Id.*

[23]*Id.*

[24]*Dille v. Council of Energy Res. Tribes*, 801 F.2d 373, 376 (10th Cir. 1986).

discussed in *Indian Country*.

Likewise, the Court is unable to locate cases that apply the *Indian Country* "tribal enterprise" analysis to extend tribal sovereign immunity to a non-tribal entity.[25]  Instead, courts have extended tribal sovereign immunity to tribal agencies,[26] tribal housing authorities,[27] and "subordinate economic organizations."[28]  Harrah's is clearly not a tribal housing authority, nor a tribal agency.  The Court must determine, however, if it is a "subordinate economic organization" of the Tribe.

The Eastern District of Wisconsin has held in two cases that tribal immunity extends to certain tribal corporations because "an action against a tribal entity is, in essence, an action against the tribe itself."[29]  Harrah's urges that it has the same relationship with the Tribe as the non-tribal entities had with the tribes in the Wisconsin cases.  In *Local IV-302 International Woodworkers Union of America v. Menominee Tribal Enterprises*, the previously quoted conclusion that an action against a tribal entity is essentially an action against the tribe marks the

[25]*But cf.*, *World Touch Gaming, Inc. v. Massena Mgmt., L.L.C.*, 117 F. Supp. 2d 271, 275 (N.D.N.Y. 2000) (stating without explanation that tribal sovereign immunity extends to "tribal enterprises").

[26]*See, e.g.*, *Hagen v. Sisseton-Wahpeton Comm. Coll.*, 205 F.3d 1040, 1043 (8th Cir. 2000); *Worrall v. Mashantucket Pequot Gaming Enter.*, 131 F. Supp. 2d 328, 330–31 (D. Conn. 2001).

[27]*See Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76, 87 (2d Cir. 2001); *MacArthur v. San Juan County*, 391 F. Supp. 2d 895, 1042 (D. Utah 2005) (citing *Snowbird Constr. Co. v. United States*, 666 F. Supp. 1437, 1441 (D. Idaho 1987)); *Weeks Construction, Inc. v. Oglala Sioux Housing Auth.*, 797 F.2d 668, 670 (8th Cir. 1986); *cf. Duke v. Absentee Shawnee Tribe of Okla. Hous. Auth.*, 199 F.3d 1123, 1125 (10th Cir. 1999) (finding housing authority included in the definition of Indian tribe within the meaning given in Title VII), *cert. denied*, 529 U.S. 1134 (1999).

[28]*See, e.g.*, *MacArthur*, 391 F. Supp. 2d at 1042; *Dixon v. Picopa Constr. Co.*, 772 P.2d 1104, 1108 (Ariz. 1989).

[29]*Local IV-302 Int'l Midworkers Union of Am. v. Menominee Tribal Enters.*, 595 F. Supp. 859, 862 (E.D. Wis. 1984) (applying tribal sovereign immunity to entity created by the tribal constitution ); *see also Barker v. Menominee Nations Casino*, 897 F. Supp. 389 (E.D. Wis. 1995) (applying tribal sovereign immunity to a corporation whose charter was issued through tribal ordinance).

8

extent of the court's discussion on the matter.[30]  The court in *Local IV-302* did not conduct an analysis of the relationship between the two entities, and in fact states that "it has been unable to find federal appeals court or district court opinion[s] which address[] the issue."[31]  In *Barker v. Menominee Nation Casino*,[32] the court concluded that the defendant casino was a subordinate economic enterprise[33] of the tribe—not that it was a "tribal enterprise" as discussed in *Indian Country*.

The subordinate economic enterprise doctrine was initially recognized by the Arizona state courts.[34]  The doctrine "allows Indian *tribes* to conduct their economic affairs through subordinate governmental agencies without fear of an unintended waiver of immunity. . . . However, the doctrine was never meant to protect entities conducting non-tribal business."[35]  Courts have adopted various tests for determining whether the subordinate economic enterprise doctrine applies to a tribal business entity.[36]  Most courts addressing the issue have considered some or all of the following factors: (1) the announced purpose for which the entity was formed; (2) whether the entity was formed to manage or exploit specific tribal resources; (3) whether

---

[30]595 F. Supp. at 862.

[31]*Local IV-302*, 595 F. Supp. at 862.

[32]897 F. Supp. 389 (E.D. Wis. 1995).

[33]*Id.* at 393.

[34]*See, e.g.*,  *Dixon*, 772 P.2d at 1108; *White Mountain Apache Indian Tribe v. Shelley*, 480 P.2d 654, 655 (Ariz. 1971).

[35]*Dixon*, 772 P.2d at 1109 (emphasis in original); *see also MacArthur*, 391 F. Supp. 2d at 1042 (recognizing doctrine).

[36]*See, e.g.*,  *Runyon ex rel. B.R. v. Ass'n of Village Council Presidents*, 84 P.3d 437 (Alaska 2004); *Trudgeon v. Fantasy Springs Casino*, 84 Cal. Rptr. 2d 65, 69 (Cal. Ct. App. 1999); *Galve v. Little Six, Inc.*, 555 N.W.2d 284, 294 (Minn. 1996); *Ransom v. St. Regis Mohawk Educ. & Cmty. Fund, Inc.*, 658 N.E.2d 989, 635 (N.Y. 1995); *Dixon*, 772 P.2d at 1109.  The United States Supreme Court has not developed such a test.

9

federal policy designed to protect Indian assets and tribal cultural autonomy is furthered by the extension of sovereign immunity to the entity; (4) whether the entity is organized under the tribe's laws or constitution rather than federal law; (5) whether the entity's purposes are similar to or serve those of the tribal government; (6) whether the entity's governing body is comprised mainly of tribal officials; (7) whether the tribe has legal title or ownership of property used by the entity; (8) whether tribal officials exercise control over the administration or accounting activities of the organization; (9) whether the tribe's governing body has power to dismiss members of the organization's governing body, and (10) whether the entity generates its own revenue, whether a suit against the entity would impact the tribe's fiscal resources, and whether it may bind or obligate tribal funds.[37]

In *Runyon ex rel. B.R. v. Ass'n of Village Council Presidents*,[38] the Alaska Supreme Court articulated a slightly different approach to determine whether tribal sovereign immunity should extend to corporate entities related to a tribe.  There, the court discussed the purposes behind tribal sovereign immunity; namely to promote tribal self-determination, economic development, and cultural autonomy.[39]  Additionally, the court identified the need to "ensure that tribal assets are used as the tribe wishes, without threat from litigation."[40]  When considering whether an entity is an arm of the tribe for purposes of tribal sovereign immunity, the court in *Runyun* found that "the entity's financial relationship with the tribe is . . . of paramount

---

[37]*See Trudgeon*, 84 Cal. Rptr. 2d at 69;  *Galve*, 555 N.W.2d at 294; *Ransom*, 658 N.E.2d at 635; *Dixon*, 772 P.2d at 1108.

[38]84 P.3d 437 (Alaska 2004).

[39]*Id.* at 440.

[40]*Id.*

importance—if a judgment against it will not reach the tribe's assets or if it lacks the 'power to bind or obligate the funds of the [tribe],' it is unlikely that the tribe is the real party in interest."[41] On the other hand, the court found that the entity may be an arm of the tribe if it would be legally responsible for the entity's obligations.[42]  Under the *Runyon* framework, if the court finds that it is responsible for those obligations, then other factors, such as how much control the tribe exerts or the purpose of the entity as commercial or governmental in nature,[43] may be relevant in determining tribal status.[44]  In the absence of on-point Tenth Circuit law, the Court finds that this line of persuasive authority is more applicable to the facts and issues presented here than *Indian Country*. Therefore, the Court now turns to the financial relationship between the Tribe and Harrah's in order to determine if Harrah's is an arm of the Tribe for purposes of sovereign immunity.  If the Tribe may be financially liable for Harrah's legal obligations, the Court will proceed to discuss other factors pertaining to the purpose and control of Harrah's.

**Financial Relationship**

Harrah's argues that the Tribe is responsible for any damages and litigation costs resulting from this lawsuit, citing a defense clause and an indemnity clause in the Management Agreement.  The Management Agreement provides:

> 9.7  Defense.  Manager shall notify the Tribal Council within two
> (2) business days of any legal action brought by a third party
> arising out of the operation of the Business. . . . Manager shall
> bring and/or defend and/or settle any claim or legal action brought

---

[41]*Id.*

[42]*Id.* at 441.

[43]The Court acknowledges that the Supreme Court does not draw a distinction between commercial and governmental activities of a *Tribe* when determining whether that tribe enjoys sovereign immunity for a particular act.  *Kiowa Tribe of Okla. v. Manuf. Techs., Inc.*, 523 U.S. 751, 755 (1998).

[44]*Id.*; *accord Wright v. Colville Tribal Enter. Corp.*, 111 P.3d 1244, 1250 (Wash. Ct. App. 2005).

> against Manager, the Business, or the Tribe, individually, jointly or
> severally, or any Business Employee, in connection with the
> operation of the Business.  Subject to the Tribe's approval of legal
> counsel, Manager shall retain and supervise legal counsel . . . as
> Manager deems appropriate to defend any such claim or cause of
> action. . . . Nothing contained herein is a grant to Manager of the
> right to waive the Tribe's or the Business's sovereign immunity.
> That right is strictly reserved to the Tribal Council.  Any
> settlement of a third party claim or cause of action out of Business
> assets in excess of [redacted] shall require approval of the
> Management Committee.

"Manager" refers to defendant Harrah's; "the Tribe" refers to the Prairie Band of Potawatomi

Indians; and "Business" is defined as "the commercial activities conducted at the Facility."  The

Management Committee referred to in this section is comprised of two persons who represent

the Tribe and two persons who represent Harrah's.  Any decision made by the Management

Committee must be unanimous.  Section 10.8 of the Agreement addresses indemnity and

provides that each party will indemnify and hold harmless the other party against damages

"related to any breach of such party of its representations, warranties, and covenants set forth in

this Agreement."

    The indemnity clause is inapplicable to the facts of this case, as the damages at issue do

not involve any breach by the Tribe or Harrah's related to the Management Agreement.  The

defense clause, however, provides that Harrah's is responsible for defending itself, the business,

and/or the Tribe against any claim that relates to the operation of the business.  The defense

clause suggests that the funds used to defend or settle such a claim would come from "business

assets."  The Management Agreement provides that certain business bank accounts shall be

established by Harrah's for the benefit of the Tribe, in the business's name.  The Management

Agreement also provides Harrah's with irrevocable banking instructions, allowing certain

officers to open and transact within bank accounts on behalf of the Tribe for the benefit of the business.  One type of account that Harrah's is required to maintain is a disbursement account, from which Harrah's has responsibility and authority to make all payments for "operating expenses," which include legal fees.  After payment of management fees and other capital expenses and reimbursements from the business accounts, all remaining net revenue is paid to the Tribe.

These provisions show that money expended from the business account for litigation expenses would be diverted from the net revenue otherwise payable to the Tribe.  However, there is no provision made for Harrah's to control or obligate funds in the Tribe accounts—only funds in the business accounts.  It is not clear that a judgment against Harrah's would reach the Tribe's assets. Therefore, the Court will proceed to evaluate other factors pertaining to the purpose and control of Harrah's as it relates to the Tribe.

### Purpose of Harrah's

Neither Harrah's nor plaintiff discuss Harrah's corporate status, or the mode or purpose of its organization.  Harrah's also fails to attach its articles of incorporation to the motion to dismiss. The parties agree that Harrah's is incorporated in a state outside of Kansas, and not by tribal ordinance or through the tribal constitution.  Arizona courts find that corporate status of the entity weighs against a finding that it is a subordinate economic organization.[45]  Further, in virtually all cases where a subordinate economic organization was found, the entity was organized under the tribal constitution or by tribal ordinance.[46]  Here, there is no evidence of

---

[45]*Dixon*, 772 P.2d at 1110.

[46]*See, e.g.*, *Barker v. Menominee Nations Casino*, 897 F. Supp. 389 (E.D. Wis. 1995) (applying tribal sovereign immunity to a corporation whose charter was issued through tribal ordinance); *Trudgeon v. Fantasy Springs Casino*, 84 Cal Rptr. 2d 65, 69–70 (Cal. Ct. App. 1999) (same);

such incorporation by the Tribe.  Furthermore, there is no evidence of the stated purpose for which Harrah's was organized, or that Harrah's limits itself to tribal projects.[47]  Harrah's attempts to equate the purpose of the *business* with the purpose of Harrah's incorporation; however, the two are clearly distinct entities, as set forth in the Management Agreement.

Although Harrah's does not exploit any natural resources on the Reservation, tribal gaming provides a major source of revenue for the Tribe, funding programs such as education and welfare.  It is also a major source of employment on the reservation.  The United States Supreme Court has recognized that "[s]elf-determination and economic development are not within reach if the Tribes cannot raise revenues and provide employment for their members."[48]  It also observed that tribal gaming "generat[es] value on the reservations through activities in which [the Tribe] ha[s] a substantial interest."[49]  Nevertheless, because the Court finds a lack of extrinsic evidence describing the purpose of Harrah's, as a non-Indian corporation, this factor weighs against a finding of sovereign immunity.

### Control of Harrah's by the Tribe

Because Harrah's failed to attach its articles of incorporation or corporate charter to the motion, its corporate structure is not entirely clear.  However, exhibits to the Management Agreement establish that Harrah's is wholly owned by Harrah's Entertainment, Inc., which is a Delaware corporation.  Furthermore, Exhibit I lists the names of Harrah's officers and directors and there is no indication that they are members of the Tribe.  Although certain decisions are

---

[47]*See Trudgeon*, 84 Cal. Rptr. 2d at 70 (considering stated purpose in tribal resolution creating entity that specifically refers to the self-determination of the tribe); *Dixon*, 772 P.2d at 1110 (finding no extrinsic evidence that corporation was intended to act or did act as an extension of the tribal government).

[48]*California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 218–19 (1987).

[49]*Id.*

14

required to go through the Management Committee, that committee is equally made up of Harrah's and Tribe members.  There is no indication that the Tribal government manages this corporation nor is there any indication that the Tribe could dismiss officers or directors of the corporation.  However, the Tribe does own and control the land and the building where the Casino is located.

Plaintiff points to language in the Management Agreement that Harrah's is an independent contractor, and not an agent of the Tribe:

> The parties agree and expressly warrant that neither the Management Agreement nor any exhibit thereto is a mortgage or lease and, consequently, does not convey any present interest whatsoever in the Facility or the Property, that it is not their intent, and that this Agreement shall not be construed, to create a joint venture between the Tribe and Manager or the Business and the Manager; rather, Manager shall be deemed to be an independent contractor for all purposes hereunder.[50]

The Court finds that this distinction is immaterial provided the ample criteria it evaluates to determine the nature of the relationship between Harrah's and the Tribe.  Regardless of how Harrah's is labeled, the Court must evaluate its financial relationship with the Tribe in addition to its purpose and how the corporation is controlled to determine whether sovereign immunity should be extended.  The Court finds that the lack of control over Harrah's corporate structure by the Tribe weighs heavily against extending its tribal sovereign immunity.

### Policy Considerations

Congress has affirmed its approval of the tribal sovereign immunity doctrine through acts

---

[50](Ex. 1 sec. 16.)

such as the Indian Financing Act of 1974,[51] the Indian Reorganization Act,[52] and the Indian Self-Determination and Education Assistance Act.[53]  The Supreme Court has acknowledged that these Acts reflect the intent by Congress to "promote the 'goal of Indian self-government, including its overriding goal of encouraging tribal self-sufficiency and economic development.'"[54]

The Court finds that tribal self-government would not be advanced by extending tribal immunity to Harrah's in this case.  Private actions by employees against a non-tribal corporation in no way limits the Tribe's ability to exercise its sovereign powers.  Furthermore, Harrah's concedes that the benefits of the business relationship received by the Tribe are commercial—in the form of profits and employment for its members.  Private contract actions based on employment discrimination do not affect the cultural autonomy of the Tribe.

In *Kiowa Tribe of Oklahoma*,[55] the Supreme Court discussed the development and rationale behind tribal sovereign immunity.  The issue in that case was whether the doctrine should be extended to commercial tribal activity off of the reservation.  The Court decided to defer to Congress to abrogate tribal immunity from suit regarding such activity and applied the doctrine.[56]  However, in dicta, the Court discussed the doctrine as it relates to the new economic context of tribal enterprises: "[I]mmunity can harm those who are unaware that they are dealing with a tribe, who do not know of tribal immunity, or who have no choice in the matter, as in the

---

[51] *See* Pub. L. No. 93-262, § 2, 88 Stat. 77.

[52] *See* ch. 576, § 1, 48 Stat. 984 (1934).

[53] *See* Pub. L. No. 93-638, § 2, 88 Stat. 2203 (1975).

[54] *See Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 510 (1991) (quoting *Cabazon Band of Mission Indians*, 480 U.S. at 216).

[55] 523 U.S. 751 (1998).

[56] *Id.* at 760.

16

case of tort victims."[57]  Although such a consideration was not determinative in that case, this

Court believes it is highly relevant to the issue of extending immunity to a non-Indian corporate

entity.  As one court has noted, such a corporation's assertion of tribal immunity could actually

deter persons or other corporations from entering into commercial relationships with such

corporate entities that are immune from suit, slowing the tribe's growth.[58]  The Court therefore

finds that policy considerations also weigh against a finding that Harrah's enjoys tribal sovereign

immunity.

Although the Court concludes that any litigation costs associated with this suit may divert

the amount of net revenue paid to the Tribe out of the business assets, there is no clear evidence

that the Tribe would be obligated to pay for Harrah's debts.  Furthermore, the Court finds that

the balance of the remaining criteria militate against extending tribal sovereign immunity to

defendant Harrah's.  Therefore, the Court denies Harrah's motion to dismiss for lack of subject

matter jurisdiction.

### B.  Tribal Exhaustion

Harrah's urges the Court to abstain from exercising jurisdiction in this case in favor of the

tribal court system.  The tribal exhaustion rule was established by the United States Supreme

Court in *National Farmers Union Insurance Cos. v. Crow Tribe*.[59]  The case holds that an

examination of tribal court jurisdiction should be made in the first instance by the tribal court.[60]

Under the doctrine, the federal court stays its hand until after the tribal court system has been

---

[57]*Id.* at 758.

[58]*Dixon*, 772 P.2d at 1112.

[59]471 U.S. 845 (1985).

[60]*Id.* at 856.

exhausted.[61]  The Court notes that tribal exhaustion is required as a matter of comity, *not as a jurisdictional prerequisite*.[62]  It is undisputed that this Court has both federal question and diversity jurisdiction to adjudicate this case.  Therefore, if there is any basis for dismissal, it is due to comity, not jurisdiction. The tribal exhaustion rule is subject to three exceptions: (1) "where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith"; (2) "where the action is patently violative of express jurisdictional prohibitions"; and (3) "where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction."[63]

The Court finds that none of the exceptions to tribal exhaustion apply here.  Harrah's did not assert tribal jurisdiction out of bad faith and it is not apparent that there would be an inadequate opportunity to challenge the tribal court's jurisdiction if the Court found exhaustion applicable.  Likewise, there is no indication that exhaustion would violate a jurisdiction prohibition.  This exception typically involves statutes where federal courts are given exclusive jurisdiction or where tribal jurisdiction is foreclosed by sovereign immunity.[64]  The Court has already determined that sovereign immunity does not extend to Harrah's.  Furthermore, the FMLA does not confer exclusive jurisdiction on the federal courts.[65]

Because the exceptions do not apply here, the Court must engage in a "comity analysis,"

---

[61]*Id.*

[62]*Strate v. A-1 Contractors*, 520 U.S. 438, 451 (1997); *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 20 n.14 (1987).

[63]*Id.* n.21; *see also Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1501 (10th Cir. 1997), *cert. denied*, 522 U.S. 1090 (1998); *Navajo Nation v. Intermountain Steel Buildings, Inc.*, 42 F. Supp. 2d 1222, 1226 (D.N.M. 1999).

[64]*Kerr-McGee Corp.*, 115 F.3d at 1502.

[65]*See* 29 U.S.C. § 2617(a)(2) (providing for concurrent jurisdiction).

considering three interests: "(1) furthering congressional policy of supporting tribal self-government; (2) promoting the orderly administration of justice by allowing a full record to be developed in the tribal court; and (3) obtaining the benefit of tribal expertise if further review becomes necessary."[66]

But a presumption of abstention sometimes applies without need for the Court to conduct a detailed comity analysis when the dispute is a "reservation affair."[67] "When the activity at issue arises on the reservation, comity concerns 'almost always dictate that the parties exhaust their tribal remedies before resorting to the federal forum.'"[68]

Harrah's urges the Court to follow its prior ruling in *Tidwell v. Harrah's Kansas Casino Corp.*,[69] where it determined that exhaustion was not required with regard to this particular defendant.[70] Harrah's, naturally opposes the authority of *Tidwell*, arguing that in that case "Harrah's did not fully explain its relationship with the Tribe and/or the facts that render it a tribal entity," as it did here in asserting tribal sovereign immunity. Although the Court has already determined that Harrah's is not a tribal entity for purposes of sovereign immunity, it will conduct an analysis of the facts raised under that issue in determining whether this case is essentially a "reservation affair" and if comity concerns dictate exhaustion.

First, defendant argues that, like in *Tidwell*, this case is not a reservation affair because both parties are non-Indians and the only connection to the Tribe is the Casino's location on

---

[66]*See, e.g.*, *Intermountain Steel Buildings, Inc.*, 42 F. Supp. 2d at 1226 (quoting *Kerr-McGee Corp.*, 115 F.3d at 1507).

[67]*Kerr-McGee*, 115 F.3d at 1507.

[68]*Id.* (quoting *Texaco v. Zah*, 5 f.3d 1374, 1378 (10th Cir. 1993)).

[69]322 F. Supp. 2d 1200 (D. Kan. 2004).

[70]*Id.* at 1204.

19

reservation land.  The Court is persuaded by *Tidwell* and plaintiff that this case does not present a classic "reservation affair," thus a presumption of abstention does not apply.  Although there is a tribal nexus based on the location of the Casino, the Tribe lacks an interest in protecting the rights of its residents here, as neither party is a member of the Tribe.[71]  Furthermore, like in *Tidwell*, this case presents claims based on federal and state law.  There is no tribal law at issue.[72]  Because the Court finds that this case does not present a "reservation affair," it will proceed to assiduously conduct a comity analysis.

For substantially the same reasons discussed in *Tidwell*, the Court declines to dismiss this suit based on considerations of comity.  The claims made by plaintiff do not implicate tribal members or challenge tribal law or policy, nor do they affect the regulation of reservation lands.  The Court also finds that the second comity factor weighs against tribal exhaustion.  There is no pending tribal suit, as there was in *National Farmers*, and there has been no jurisdictional attack on the tribal court.[73]  As a result, the orderly administration of justice is not implicated.  Finally, there is no need for tribal expertise in this case.  As already explained, the claims involved are strictly federal and state claims.  Therefore, even if tribal exhaustion is applicable, comity concerns do not require dismissal of the suit.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to

---

[71]*Kerr-McGee*, 115 F.3d at 1508 (considering the interest of the tribe in protecting and vindicating the rights of its residents when evaluating whether the case presented a reservation affair).

[72]*See Intermountain Steel Buildings, Inc.*, 42 F. Supp. 2d at 1229 (considering whether tribal law is at issue in determining whether the case presents a reservation affair).  Further, defendant fails to point the Court to any instance where a court has required tribal exhaustion due to concurrent jurisdiction over a dispute between two non-Indian parties.

[73]*Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985).  The Court is well aware of the Tenth Circuit's admonition that "the exhaustion rule does not require an action to be pending in tribal court."  *United States v. Tsosie*, 92 F.3d 1037, 1041 (10th Cir. 1996).  Nevertheless, the Court considers the lack of a pending action, among other factors, in its analysis.  *See Hartman v. Kickapoo Tribe Gaming Comm'n*, 176 F. Supp. 2d 1168, 1181 n.6 (D. Kan. 2001), *aff'd*, 319 F.3d 1230 (10th Cir. 2003).

Dismiss Based on Tribal Sovereign Immunity (Doc. 24) is **denied**.

      **IT IS SO ORDERED**.

    Dated this 23rd day of February 2006.

                      S/ Julie A. Robinson
                     Julie A. Robinson
                     United States District Judge

Order Denying Motion to Dismiss, *Johnson v. Harrah's Kansas Casino Corp.*, Case 04-4142.